A. Franklin Mahoney,
Acting Rensselaer County Court Judge. The defendant was convicted, after a jury trial, in County Court, Rensselaer County, on December 23, 1963, of manslaughter in the first degree and sentenced to a term of P/% to 15 years in prison. An appeal was taken by the defendant to the Appellate Division, Third Department, from the aforementioned conviction and sentence, and, on January 8, 1965, on motion of defendant’s counsel, an order was entered withholding determination of the appeal and remitting the case to this court for the purpose of holding a hearing (23 A D 2d 514) “ for determination of the issues respecting the alleged confession, as such issues are defined in Jackson v. Denno [378 U. S. 368] * * * without a jury, in conformity with the procedure prescribed in People v. Huntley (15 N Y 2d 72) ”.
I, the Surrogate of Rensselaer County, am empowered and authorized to preside at this type of he.aring, and, did so preside, in the instant case, pursuant to an order of Ellis J. Staley, Jb., Supreme Court Justice and Administrative Judge of the Third Judicial District, made on the 6th day of February, 1965 and entered in the office of the Clerk of Rensselaer County, New York, on the 8th day of February, 1965.
*996 The statement in question Avas introduced in the Jackson v. Denno (378 U. S. 368) hearing before me both as part of the original trial record and separately. In fact, the plenary trial record and statement constituted the People’s case. The District Attorney did not call or SAvear any witnesses. He chose to rely solely on the testimony of the witnesses sworn in the People’s case in the plenary trial, as such testimony related to the issue of the voluntariness of the statement.
•Counsel for the defendant objected to the receipt in evidence of the trial record on the ground that such record necessarily carried with it the statement which the Trial Judge had adjudicated, as a matter of law, to be an admissible confession. It was the contention of defendant’s counsel that a preliminary determination as to the character of the statement must be made by me before a hearing of this nature could be conducted. The rationale of defendant’s objection seems to be that since the statement was received as a confession in the main trial over his objection and, further, since the order of the Appellate Division remitting this case refers to the statement as an “ alleged confession ”, it is not, therefore, a proper subject for a Jackson v. Denno hearing. I overruled this objection and received as evidence in this hearing the entire trial record on the authority of People v. Huntley wherein the court said (p. 77):
“ Some but not all of the other questions which have been or will be raised because of Jackson v. Denno (supra) are answered by us as follows:
“ (1) As to trials already concluded: * * * As to the type of hearing to be had, there is no constitutional impediment to using the prior record provided that the defendant and the People are permitted to put in additional proof if either side so desires.”
Obviously, the Court of Appeals, in establishing guidelines for the conduct of postconviction hearings, envisioned instances where the People would not desire to “ put in additional proof ” but, rather, depend solely on the testimony of witnesses sworn in the plenary trial. Such a course by the People might be necessitated by the death or unavailability of witnesses Avho had testified in the main trial, or, the People, satisfied with the original proof of the voluntariness of defendant’s statement, might be unwilling, or deem it unwise, to hazard the construction of a new ease upon old recollections. Further, this case was remitted for a hearing on the voluntariness of defendant’s statement not because it had been incorrectly labeled a confession by the Trial Judge but, rather, because of the unconstitutional procedure *997 followed in determining its admissibility as evidence. It is the constitutional defect inherent in the old New York practice of conducting voir dire hearings that ran afoul of the appellate process not the character or nature of the statement itself.
Next, there is nothing in the trial record, nor was any evidence adduced in the hearing before me, proving any coercion, physical or otherwise, was perpetrated upon the defendant, which caused him to involuntarily make and sign a statement against his interest. Both the trial and hearing records are void of any evidence that the defendant was struck, threatened or promised anything to induce him to make an inculpatory statement.
The defendant’s attack on the voluntariness of his statement is of a subtler nature. While not conceding that he was not coerced in any physical sense, he, nevertheless, argues that the statement is involuntary since the same was taken from him in the absence of counsel. The defendant’s authority for this position is Escobedo v. Illinois (378 U. S. 478). He argues the factual situation herein is such that condemnation of the investigative procedure is required.
In the instant case, formal proceedings had not commenced against the defendant. The crime was first discovered at approximately 8:00 p.m., on July 23,1963 and the defendant was brought into the Central Police Station in Troy, New York, at approximately 1:00 a.m. on July 24, along with other suspects whose identity had been obtained from an address book belonging to the deceased. He was released and he left the station house about 3:00 a.m., only to be returned for further questioning less than 12 hours later. It was during this second period that defendant confessed. It was also during this second period, but before he confessed, that a law clerk from the law office of Mr. Frank Tate, Jr., called the station house and inquired of the chief of detectives if the defendant was there and, if so, for what purpose. Chief Bokjer informed the clerk that the defendant was undergoing routine questioning and, further, that he was not in need of the services of an attorney. Shortly thereafter, the defendant confessed and Avas “booked”. The laAv clerk, now attorney Lionel Sacks, testified before me that he did not seek nor was access to the defendant denied to him. Further, he did not demand that the police refrain from questioning his client.
While it is true a defendant has a constitutional and statutory right to counsel “ at every stage of a criminal cause ” (People v. Waterman, 9 N Y 2d 561, 565; N. Y. Const., art I, § 6) and this guarantee “ includes a reasonable time to obtain counsel ” *998 (People v. Marincic, 2 N Y 2d 181), it no longer follows that these protections are applicable only when a suspect has been arraigned or indicted (People v. Di Biasi, 7 N Y 2d 544). Formerly, it was the settled law of this State that a defendant had a constitutional right to legal representation only when the criminal processes of the People had singled him out and formal proceedings against him had commenced (People v. Waterman, supra). Thereafter, in the absence of counsel, any inculpatory statement, no matter how painlessly obtained, contravened the defendant’s constitutional rights.
However, the decisional law of this State has been undergoing change with respect to statements made by suspects in criminal matters. Until recently, the law of this State regarding non- • coerced statements taken from suspects prior to arraignment or indictment was unsettled (People v. Stanley, 15 N Y 2d 30, 32). It was largely a question of legal semantics. Had the suspect requested counsel? Had the police failed to warn him of his constitutional right to remain silent? Had the investigation become “ accusatory ” rather than “ investigatory ” in nature ? Had some member of the accused’s family retained counsel? Was access denied to retained counsel? Had retained counsel instructed the police not to question his client in his absence? Did the findings of the United States Supreme Court in Escobedo v. Illinois (supra) compel an extension of the established law of this State as defined in People v. Donovan (supra); People v. Waterman (supra) and People v. Di Biasi (supra) ?
These questions and others, including the one necessary to resolve this case, were answered by the Court of Appeals in the recent case of People v. Gunner (15 N Y 2d 226). In this case the court answered in the negative the question raised in People v. Stanley and held that inculpatory statements taken from suspects, while in custody prior to arraignment or indictment, and while the suspect is the sole target of the investigative process, are admissible even though the police have not advised him of his privilege to remain silent or of his right to counsel. Therefore, the law of this State as defined in the Donovan, Waterman and Di Biasi cases, as that law relates to an unrepresented suspect, remains unchanged.
However, the case of People v. Gunner (supra) clarifies the law of the Donovan case so as to require the exclusion of inculpatory statements made by a defendant, before arraignment or indictment, but after the police have been advised that the said defendant is represented by counsel who has requested that no statements be taken from his client. It is, therefore, not necessary to exclusion that access by the attorney be denied. It is *999 enough that the police know that the defendant is represented and that the retained attorney does not want any statements taken in his absence.
Is it enough, however, as in the case at bar that the police know the suspect is represented by counsel although access has not been requested nor has a demand been made that the police refrain from questioning him? If it is, should this constitutional defect be considered by me on the issue of voluntariness or left to that part of defendant’s appeal retained by the Appellate Division?
In my view, the facts of this case when measured against the law of the Gunner decision compel a negative answer to the first question. In order to apply the definitive law relating to the constitutionality of statements taken from suspects, prior to arraignment or indictment, in the absence of counsel, as such law was recently set forth in the Gunner decision, it is imperative that the court inquire into the relationship existing between, the suspect and the police at the time of and immediately prior to the taking of the statement. If the suspect is in fear as evidenced by his request to see counsel or by his request to see some member of his family (People v. Taylor, 22 A D 2d 524) and such request is denied, the statement, if any, is constitutionally defective. Similarly, if the police know that the suspect is represented by counsel and access has been denied (People v. Donovan, supra) or if they know that counsel, though not physically present, has demanded that no statements be taken from his client, the statement, if any, is inadmissible. (People v. Gunner, supra.)
In the present case defendant Ressler did not request to see counsel or any member of his family. Neither did counsel, retained by his mother, demand access or instruct the police to refrain from questioning Ressler.
I, therefore, find the confession of defendant Ressler to be * voluntary, and, further, that his constitutional rights guaranteed by section 6 of article I of the New York Constitution were not violated.
Since I have concluded that the confession was voluntary and not unconstitutionally obtained by the police, it is unnecessary to consider whether the constitutionality of the procedure used should be considered by me on the issue of voluntariness.